IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

SHAWN MCGUIRE,

               Plaintiff,

     vs.

VOSS, Officer; AMANDA MILLER,
Crime Lab Tech; and  OMAHA POLICE
DEPT.,

               Defendants.

**8:20CV184**


**MEMORANDUM
AND ORDER**

      Plaintiff, Shawn McGuire ("McGuire"), a state prisoner, filed his Complaint on May 14, 2020. (Filing 1.) McGuire has been granted leave to proceed in forma pauperis. (Filing 6.) Now that he has paid the required initial partial filing fee, the court conducts an initial review of McGuire's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. SUMMARY OF COMPLAINT

      McGuire claims he was denied due process because Defendants, Officer Voss and Crime Lab Tech Amanda Miller of the Omaha Police Department, (1) did not test for DNA on 10 live rounds of ammunition that were introduced into evidence at his criminal trial and (2) did not provide him with the results of DNA testing that was performed on other evidence collected. McGuire alleges that DNA testing on the live rounds of ammunition would rebut the prosecution's argument that McGuire handed the ammunition to his co-defendant. McGuire requests that the court order post-conviction DNA testing on the 10 live rounds of ammunition.

## II.  LEGAL STANDARDS ON INITIAL REVIEW

      The court is required to conduct an initial review of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or

employee of a governmental entity." 28 U.S.C.A. § 1915A(a). On such initial review, the court must dismiss the complaint if it: "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C.A. § 1915A(b). *See also* 28 U.S.C. § 1915(e)(2)(B) (requiring dismissal of in forma pauperis complaints "at any time" on the same grounds as § 1915A(b)).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## III. DISCUSSION

Liberally construing McGuire's Complaint, this is a civil rights action brought under 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal

statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

As an initial matter, the court notes that the Omaha Police Department is not a proper defendant. See *Frazier v. City of Omaha Police Dep't*, No. 8:18CV539, 2019 WL 582122, at *2 (D. Neb. Feb. 13, 2019) (police department is not a suable entity). Also, because Plaintiff does not specify that Defendants Voss and Miller are being sued in their individual capacities, the court must presume they are being sued only in their official capacities. *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007). "A suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (internal citations omitted). Thus, as a practical matter, this action is brought against the City of Omaha.

In the "Statement of Claim" section of his Complaint, McGuire sets out the following facts and theory of his case:

> During the investigation when the defendants conducted surveillance on the drug sting going on at the auto shop the plaintiff left before anything going down and when the plaintiff drove off from the crime scene and the plaintiff was in a car accident at another location  is when the defendant found 10 live rounds outside the white Sebring the plaintiff was driving. The defendants collected them 10 live rounds into evidence which they failed to test them for DNA testing that cause the harm toward the plaintiff statutory right to due process to test the evidence because the state argument that the plaintiff handed them to his co-defendant. Without no DNA testing to determine if the plaintiff touch those 10 live rounds had caused harm by the defendants falsely accusing him of. Then with the continuance of the defendants not notifying the plaintiff in writing about the other DNA test results from other collected evidence led to deprive the plaintiff the right under the Nebraska statute that led a conviction of a total of 105 years without no proof that the defendant committed.

> The defendants violated the plaintiffs due process by violating the state laws to the Neb. Rev. Stat. 29-4120, 29-4126 to deny him the right to know the DNA findings on the collected evidence they did test. But on

other collected evidence the defendants failed to follow standard procedure and protocol to test the 10 live rounds which they used during my trial proceedings. Where the State Court refusing me to DNA testing on Brady material that's in possession of the State that's relevant to my innocent.

(Filing 1 at 4-5.) McGuire does not seek to recover damages, but instead asks the court to review the facts of his criminal case and to order DNA testing on the live rounds of ammunition. He states:

I like the Court to review the fact of my case that I was denied to the DNA test results knowingly the officers had a duty to notified me in writing about the findings and to have the defendants to test the DNA on the 10 live rounds that was never tested. Where, I respectfully request the Court to grant the DNA testing on those 10 live rounds that was not subject to DNA because if I had handed them to my co-defendant there would be fingerprints on them.

(Filing 1 at 6.)

The court takes judicial notice that McGuire was convicted in the District Court of Douglas County, Nebraska, of second-degree murder under a theory of aiding and abetting, use of a deadly weapon to commit a felony, and criminal conspiracy to unlawfully possess and deliver a controlled substance. *See State v. McGuire*, 837 N.W.2d 767 (Neb. 2013) (affirming convictions and sentences); *State v. McGuire*, 910 N.W.2d 144 (Neb. 2018) (affirming denial of postconviction relief); *McGuire v. Hansen*, No. 4:18CV3102, 2020 WL 555372 (D. Neb. Feb. 4, 2020) (denying federal habeas corpus relief), *appeal dismissed*, No. 20-1324, 2020 WL 4687032 (8th Cir. June 22, 2020).[1]

The court also takes judicial notice that on June 18, 2018, McGuire filed a post-conviction motion in the District Court of Douglas County, Nebraska, Case No.

---

[1] The court can *sua sponte* take judicial notice of its own records and files, and facts which are part of its public records. *United States v. Jackson*, 640 F.2d 614, 617 (8th Cir. 1981). Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it. *Id.*

CR10-9077789, requesting "DNA Touch Testing" of "10 live 9-mm rounds found next to the Sebring." *See* Transcript filed with Nebraska Court of Appeals in Case No. A-19-269, pp. 6-8 (available at https://www.nebraska.gov/justice).[2] McGuire argued that the testing was relevant to prove his innocence. *See id.* The State filed an index of property showing that the 10 live rounds were in the State's possession. (A-19-269, T13-42.) McGuire subsequently filed a "Motion to Request Additional Document," in which he asserted that the State failed to disclose to him results of DNA testing that the State claimed to have previously conducted on "the evidence in question." (A-19-269, T44-45.) On February 19, 2019, the district court entered an order denying McGuire's motion for DNA testing, but did not rule on McGuire's subsequent motion. (A-19-269, T46-49.) McGuire then appealed. At the State's suggestion, the Nebraska Court of Appeals reversed the district court's order and remanded with directions because in denying the motion for DNA testing, the district court had erroneously "mingled standards applicable to Neb. Rev. Stat. §§ 29-4120 and [2]9-4123" of the DNA Testing Act.[3]

---

[2] The complete district court file is also available on the State of Nebraska's *Justice* website.

[3] The Nebraska DNA Testing Act provides that "a person in custody pursuant to the judgment of a court may, at any time after conviction, file a motion, with or without supporting affidavits, in the court that entered the judgment requesting forensic DNA testing of any biological material that:

(a) Is related to the investigation or prosecution that resulted in such judgment;

(b) Is in the actual or constructive possession or control of the state or is in the possession or control of others under circumstances likely to safeguard the integrity of the biological material's original physical composition; and

(c) Was not previously subjected to DNA testing or can be subjected to retesting with more current DNA techniques that provide a reasonable likelihood of more accurate and probative results." Neb. Rev. Stat. Ann. § 49-4120(1) (Westlaw 2020). If these criteria are met, and the reviewing court finds that "testing may produce noncumulative, exculpatory evidence relevant to the claim that the person was wrongfully convicted or sentenced" under § 29-4120(5), the court must order DNA testing. *State v. Hale*, 947 N.W.2d 313 (Neb. 2020). "Upon receipt of the results of such testing, any party may request a hearing before the court when such results exonerate or exculpate the person. Following such hearing, the court may, on its own motion or upon the motion of any party, vacate and set aside the judgment

Following remand, on January 3, 2020, the district court entered an order again denying McGuire's post-conviction motion for DNA testing. *See* Transcript filed with Nebraska Court of Appeals in Case No. A-20-79, pp. 19-28 (available at https://www.nebraska.gov/justice). The district court found that McGuire was not entitled to DNA testing under Neb. Rev. Stat. § 29-4120(5)(c) because the testing would not produce noncumulative, exculpatory evidence relevant to the claim that he was wrongfully convicted. (A-20-79, T25-27.) The district court on remand also denied McGuire's "Motion to Request Additional Document," finding that his request was not proper under a motion for DNA testing. (A-20-79, T27.) McGuire then filed another appeal, which is still pending before the Nebraska Court of Appeals (Case No. A-20-79).

To the extent McGuire may be claiming here that he was denied a fair trial because evidence was not subjected to DNA testing, or because he was not provided the results of DNA testing, this court is unable to grant him any relief. The United States Supreme Court has held that a prisoner in state custody cannot use a § 1983 action to challenge "the fact or duration of his confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973); *see also Wolff v. McDonnell*, 418 U.S. 539, 554 (1974); *Heck v. Humphrey*, 512 U.S. 477, 481 (1994); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). "He must seek federal habeas corpus relief (or appropriate state relief) instead." *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). A § 1983 action cannot be maintained until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87.

This line of cases establishes that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Dotson*, 544 U.S. at 81-

---

and release the person from custody based upon final testing results exonerating or exculpating the person." Neb. Rev. Stat. Ann. § 29-4123(2) (Westlaw 2020).

82 (emphasis in original). For example, "a *Brady* claim [that exculpatory evidence was suppressed by the prosecution],[4] when successful postconviction, necessarily yields evidence undermining a conviction: *Brady* evidence is, by definition, always favorable to the defendant and material to his guilt or punishment. … Accordingly, *Brady* claims have ranked within the traditional core of habeas corpus and outside the province of § 1983." *Skinner v. Switzer*, 562 U.S. 521, 536 (2011).

By contrast, "a postconviction claim for DNA testing is properly pursued in a § 1983 action." *Id.* at 525. This is because "[s]uccess in the suit gains for the prisoner only access to the DNA evidence, which may prove exculpatory, inculpatory, or inconclusive. In no event will a judgment that simply orders DNA tests 'necessarily impl[y] the unlawfulness of the State's custody.'" *Id.* (quoting *Dotson*, 544 U.S. at 81). Importantly, however, the Supreme Court's decision in *District Attorney's Office for Third Judicial Dist. v. Osborne,* 557 U.S. 52 (2009), "severely limits the federal action a state prisoner may bring for DNA testing." *Skinner*, 562 U.S. at 525. "*Osborne* rejected the extension of substantive due process to this area, and left slim room for the prisoner to show that the governing state law denies him procedural due process." *Id.* (citations omitted).

In this case, McGuire is not claiming that Nebraska's DNA Testing Act denies him procedural due process—in fact, he is currently pursuing his remedies under that Act in state court. Instead, he is claiming that an Omaha police officer and a lab technician violated his substantive due process rights during their investigation into the crimes of which he stands convicted. This claim necessarily fails because there is no "freestanding right to DNA evidence untethered from the liberty interests [McGuire] hopes to vindicate with it." *Osborne*, 557 U.S. at 72.

### III. CONCLUSION

McGuire's Complaint fails to state claim upon which relief may be granted against Defendants (*i.e.*, the City of Omaha). The court will not grant McGuire leave to amend, because it concludes that any amendment would be futile.

---

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

Accordingly,

IT IS ORDERED:

1.      This action is dismissed without prejudice.

2.      Judgment shall be entered by separate document.

Dated this 9th day of September, 2020.

                                        BY THE COURT:

                                        *Richard G. Kopf*

                                        Richard G. Kopf
                                        Senior United States District Judge